**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | CASE. NO. 21-mj-274 |
| | : | |
| | : | |
| **SHAWN CORTES MOSES,** | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO REVIEW THE PRETRIAL DETENTION ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defense's request for a Review of the Pretrial Detention Order. In support of this motion, the government submits as follows.

**PROCEDURAL HISTORY**

On March 3, 2021 the Defendant was arrested and charged via Criminal Complaint with the Sexual Exploitation of Children, in violation of Title 18 United States Code Sections 2251(a), and First Degree Child Sexual Abuse with Aggravating Circumstances, in violation of D.C. Code §§ 22-3008, 3020(a)(1), 3020(a)(4). On March 5, 2021, following a fulsome hearing, Magistrate Judge Zia M. Faruqui granted the Government's Motion for Detention, ruling that detention was appropriate because there was no condition or combination of conditions that would reasonably assure the safety of any person in the community. The Defendant has remained in custody since his arrest. On March 22, 2021, the Defendant filed a motion, asking that the Defendant be released to home confinement, ostensibly for the purposes of undergoing an evaluation and possibly treatment for a sexual disorder. *See* Defendant's Motion, ECF No. 13. The Defendant's desire to

1

"utilize the pretrial period proactively" does not alter the statutory factors that this Court must consider when weighing whether or not the Defendant has rebutted the presumption in favor of detention that exists due to the nature of the charges in this case. Id. at page 3; *See also* 18 U.S.C. §§ 3142(e)(3)(E)(an offense involving a minor victim) and (f)(1)(a crime of violence). A review of the factors that this Court must consider, pursuant to 18 U.S.C. § 3142(g), makes clear that there are no conditions of release that will reasonable assure the safety of any other person and the community. As such, the Defendant must be detained pending trial.

## ARGUMENT

A defendant must be detained pending trial, if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A defendant ordered detained by a magistrate judge may seek review of the detention order by the court having original jurisdiction over the offense. 18 U.S.C. § 3145(b). Any such motion shall be determined promptly. *Id.*

### I.     The Bail Reform Act factors, considered by the Magistrate Court in the original detention determination, remain in favor of detention.

**A.     Nature and Circumstances of the Charged Offense**

Upon the defendant's arrest in this matter, the government requested the defendant's pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(A), which allows the Court to hold a detention hearing in matters involving crimes of violence. The Defendant was detained following a fulsome hearing. The defendant cites no change of circumstances or other facts warranting a reversal of Judge Faruqui's order. When reviewing the instant motion, this Court should consider the same

2

statutory factors considered by Judge Faruqui, including (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community, and the risk of flight, which would be posed by the defendant's release.  18 U.S.C. § 3142(g).  Respectfully, there has been no change in these factors to date.

The Defendant is currently charged with an offense which carries a mandatory minimum sentence of fifteen years.  *See* 18 U.S.C. 2251(a).  In this case, the Defendant abused and exploited a seven-year-old little girl for his own sexual gratification.  He did so knowing that the assault perpetrated on the child was being recorded- forever memorializing the abuse that this little girl endured.  This factor clearly favors detention, since the defendant's criminal conduct is egregious, and his offenses have been perpetrated against the most vulnerable members of our society:  children.

Children who are sexually abused, like the seven-year-old victim in this case, often suffer serious physical and mental health issues.  Studies suggest that early trauma, including sexual abuse, may interfere with brain development, and can produce various neuropsychiatric symptoms commonly associated with drug use.  *See* Anderson, C. M., Teicher, M. H., Polcari, A., & Renshaw, P. F.  (2002):  Abnormal T2 relaxation time in the cerebellar vermis of adults sexually abused in childhood: Potential role of the vermis in stress-enhanced risk for drug abuse.  *Psychoneuroendocrinology, 27*, 231-244; Baynard, V. L., Williams, L. M., & Siegel, J. A.  (2001): The long-term mental health consequences of child sexual abuse: An exploratory study of the impact of multiple

3

traumas in a sample of women. *Journal of Traumatic Stress, 14*(4), 697-715 (noting that child sexual abuse victims reported a lifetime history of more exposure to various traumas and higher levels of mental health symptoms). Other studies have found that individuals who suffer sexual abuse in their childhood years have a higher rate of anxiety, disruptive behaviors, substance abuse, and personality disorders compared to others who may have experienced other forms of abuse or neglect. *See* Cohen, P., Brown, J., & Smailes, E. (2001): Child abuse and neglect and the development of mental disorders in the general population. *Development and Psychopathology, 13*, 981-999; Dube, S. R., Anda, R. F., Felitti, V. J., Chapman, D. P., Williamson, D. F., & Giles, W.H.(2001): Childhood abuse, household dysfunction, and the risk of attempted suicide throughout the life span: Findings from the adverse childhood experiences study. *JAMA, 286*(24), 3089-3096 (noting that a powerful relationship exists between adverse childhood experiences and risk of attempted suicide through the life span); Merrill, L. L., Thomsen, C. J., Sinclair, B. B., Gold, S. R., & Milner, J. S. (2001): Predicting the impact of child sexual abuse on women: The role of abuse severity, parental support, and coping strategies. *Journal of Consulting and Clinical Psychology, 69*(6), 992-1006 (child sexual abuse is a significant predictor of long-term psychological difficulties ranging from depression and anxiety to sexual problems and dissociative symptomatology). Research also indicates that sexually abused adolescents are at an increased arrest rate for sex crimes and prostitution, and are at an increased risk for earlier pregnancy. *See* Putnam, F. W. (2003): Ten-year research update review: Child sexual abuse. *Journal of the American Academy of Child and Adolescent Psychiatry, 42*(3).

The consequences that children suffer as a result of being sexually abused and exploited by adults are often devastating and lifelong. There can be no doubt of the severity of the Defendant's crimes, a factor which weighs heavily in favor of detention.

### B. The Weight of the Evidence Against the Defendant

As proffered by the Government during the Detention Hearing, and as observed by the Judge Faruqi, the evidence of the Defendant's guilt is extremely strong. The government is in possession of recorded communications between the defendant and another individual, who is referenced in the Complaint as DEFENDANT #1. These communications, which occurred over different dates, corroborate the nature of the sexual relationship this defendant engaged in with DEFENDANT #1. Furthermore, the government is in possession of three videos, each which graphically depict the defendant's sexual abuse of a defenseless child. Not only has DEFENDANT #1 confirmed that this defendant is the adult man who can be seen in these videos, but law enforcement has confirmed that this defendant has a distinctive, heart-shape birthmark on his back – which is visible in the videos recovered in DEFENDANT #1's Dropbox account.

Following the defendant's arrest, he was read his *Miranda* warnings, and interviewed by law enforcement. The defendant admitted that he knew DEFENDANT #1; that he engaged in a sexual relationship with her; and that he had been to her home on more than one occasion. Furthermore, the defendant admitted to using KIK to communicate with DEFENDANT #1. Furthermore, and most importantly, this defendant admitted that while he was inside DEFENDANT #1's home, he sexually abused a little girl, knowing that the assault was being recorded. The defendant claimed he did so at DEFENDANT #1's direction and that he had seen some of the videos

5

that were created, depicting this abuse. Thus, the weight of the evidence also weighs heavily in favor of detention.

### C. History and Characteristics of the Defendant

Judge Faruqui considered the Defendant's lack of a criminal record and his familial support when issuing his Order of Detention. However, the fact that the defendant has no criminal history – nor record of arrests- does not mean that he has not engaged in prior criminal conduct, particularly in offenses involving the online exploitation of children and the hands-on sexual abuse of children.

The sexual exploitation of children is a crime that is committed in secret. This secrecy, combined with the overwhelming presence of digital devices and the near universal access to the internet, makes detection of these criminal offenses difficult. As this case demonstrates, the defendant was utilizing the Internet to meet individuals who had various sexual interests and access to children. He communicated with some of these individuals online, and met some of them in person. The sexual assault this defendant committed against a child, which was captured on videotape, occurred approximately three years prior to his arrest. It would have remained undetected, had law enforcement not successfully investigated and arrested the individual referred to in the Criminal Complaint as DEFENDANT #1.

As the Government pointed out in its Detention Memo, the lack of an arrest record's significance should be called into question in cases involving the sexual exploitation and abuse of children, because it is well-known that children often do not disclose sexual abuse, and that these types of crimes are wildly underreported. *See United States v. Gregory Todd Numan*, 3:160cr000065(TMB)(DAK)(February 26, 2018: Expert Testimony of Clinical Psychologist Darrell Turner). In *Numan*, Dr. Turner provided expert testimony to the Court to explain why a

6

reliance on the lack of prior criminal history of an offender charged with sexual offenses committed against children does not serve as a reliable indicator of their future risk for reoffending. As explained by Dr. Turner:

> "One of the main problems is the fact that these offenses are among the most undetected offenses that there are. This is not like bank robbery or murder, where it's generally assumed and expected that it's going to be detected and reported. We know from research that about only about five percent of sexual offenses against children are ever reported.
>
> Of those, of that five percent, about another five percent result in a conviction. So we're talking about an exponentially small number of offenses that are reported and accounted for. So it's sort of akin to saying there were only four drunk people in New Orleans in Mardi Gras this year because there were only four arrests for public intoxication, and it's not a good representation of what's actually going on out there. So to say it without the qualifier that, hey, this is a gross underestimate, but you know, so far, this is what we've been able to find, I think, is misleading and very, very dangerous."

at pages 22-23. *See also* K. London, M. Bruck, S. J. Ceci & D. W. Shuman, *Disclosure of Child Sexual Abuse: What Does the Research Tell Us About the Ways Children Tell?*, 11 PSYCHOLOGY, PUB. POL'Y & L. 1, 194-226 (American Psychological Association, 2005)(finding in a study of adult retrospective victim studies about child sex abuse, approximately 60 – 70% of adults sexually abused as children did not recall disclosing the abuse during childhood); *See also* D. W. Smith, E. J. Letourneau, B. E. Saunders, D. G. Kilkpatrick, H. S. Resnick & C. L. Best, *Delay in Disclosure of Childhood Rape: Results from a National Survey*, 24 CHILD ABUSE & NEGLECT 2, 273-87 (2000)(the results of the study found that only 12% of child rape victims' assaults were reported to law enforcement authorities.). As such, the fact that the Defendant

7

lacks a criminal record, given the ways in which these types of crimes are committed and the reluctance and inability of the victims to disclose, should be given less weight, given the nature of the offense he is currently charged with.[1]

### D. The Nature and Seriousness of the Danger to Any Person or the Community

Finally, there is simply no way to overstate the danger to the community that this Defendant poses should he be released. During the Detention Hearing, the Defendant's proffers of much more restrictive conditions of release, including the High-Intensity Supervised Release Program, failed to rebut the presumption that no condition or combination of conditions existed to reasonably assure the safety of any other person and the community. *See* 18 U.S.C. § 3142(e)(2). Now, the Defendant suggests that he be released to home confinement with his parents with GPS monitoring. *See* Defendant's Motion, ECF No. 13. This proposed release condition is woefully insufficient to reasonably assure the safety of the minor victim and other children in the community.

As the Eastern District of New York has held:

> ...the issue is not only defendant's potential abuse of children and his interaction with children if on bail, but also his ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006). The *Reiner* court further found that there were no conditions in that case that could reasonably assure the safety of the

---

[1] Additionally, while the Defendant was employed at the time of his arrest, it is the Government's understanding that the company has begun the process to terminate his employment.

community "[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..." Id. at 399; *see also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008) (S.D.W.Va. April 29, 2008)(unpublished)(noting the ease of accessing the internet by means of various devices and stating "[t]he Court finds that the evidence clearly and convincingly establishes that, confined to his home and electronically monitored, defendant would not be prevented from obtaining the means to access the internet and attempting again to obtain child pornography and in this poses a danger to children and the community"); *United States v. Doyle,* 2007 WL 1097844, *1 (W.D.Va. 2007)(finding danger of future offenses "especially considering that pornographic images of children are widely available on the internet and can be easily accessed by a personal computer"), conviction rev'd on other grounds, 650 F.3d 460 (2011).

As the government argued during the detention hearing on March 5, 2020, home confinement, even in the presence of a third-party custodian, is not sufficient to alleviate the danger this offender poses to the community when the Court considers how this Defendant committed the offenses he is charged with. Here, this offender was using digital devices and the Internet to meet other individuals with various sexual fetishes, some of whom he met in person. He used these devices to communicate with DEFENDANT #1, and to record and view the sexual abuse of a little girl. He did so using internet capable devices that are mobile, widely available, and difficult to detect. Furthermore, the Defendant committed his crime all while he was presumably close with, and having daily contact with, his parents – the proposed third-party custodians. For these reasons, it is clear that that the defendant poses a significant danger to the community and, given this risk, there is no condition or combination of conditions that will reasonable keep the community safe if the defendant is released. The Defendant's arguments do

9

not outweigh the statutory factors outlined in 18 U.S.C. § 3142(g) and he should remain detained pending trial.

**WHEREFORE**, for the foregoing reasons and for any other such reasons as may appear to the Court, the government respectfully requests that the Court deny the defense motion for review of the Detention Order.

                                      Respectfully submitted,
                                      CHANNING D. PHILLIPS
                                      Acting United States Attorney
                                      D.C. Bar No. 415793

                                      By: \_\_\_/s/_____
                                      AMY E. LARSON
                                      Assistant United States Attorney
                                      N.Y. Bar No. 4108221
                                      555 4th Street, N.W.,
                                      Washington, D.C. 20530
                                      202-252-7863
                                      Amy.larson2@usdoj.gov

Dated: March 24, 2021