UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | CASE. NO. 21-mj-274 |
| | : | |
| | : | |
| **SHAWN CORTES MOSES,** | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
SECOND MOTION TO REVIEW THE PRETRIAL DETENTION ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the Defendant's second request for a Review of the Pretrial Detention Order, filed on November 5, 2021. In his motion, the Defendant has not provided sufficient information to rebut the applicable presumption of dangerousness, nor any basis for the Court to reverse is earlier decision to detain the Defendant pending trial. The United States maintains that there is no combination of conditions that would reasonably assure the safety of the community should the defendant be released and asks the Court to continue to detain the Defendant pursuant to 18 U.S.C. § 3142(e). In support of this motion, the government submits as follows:

**PROCEDURAL HISTORY**

On March 3, 2021 the Defendant was arrested and charged via Criminal Complaint with the Sexual Exploitation of Children, in violation of Title 18 United States Code § 2251(a), and First Degree Child Sexual Abuse with Aggravating Circumstances, in violation of D.C. Code §§ 22-3008, 3020(a)(1), 3020(a)(4). On March 5, 2021, following a hearing, Magistrate Judge Zia

1

M. Faruqui granted the Government's Motion for Detention, ruling that detention was appropriate because there was no condition or combination of conditions that would reasonably assure the safety of any person or the community. On March 22, 2021, the Defendant filed his first "Motion to Review Pretrial Detention Order," asking that he be released to home confinement, ostensibly for the purposes of undergoing an evaluation and possibly treatment for a sexual disorder. *See* Defendant's Motion, ECF No. 32. During a fulsome hearing held on April 13, 2021, the Defendant sought to rebut the presumption of dangerousness and presented the testimony of live witnesses, including his father, and submitted documentation regarding his interest in treatment and his support from members of the community. *See* 18 U.S.C. § 3142(e)(3)(E) (presumption of dangerousness for an offense involving a minor victim) and § 3142(f)(1) (a crime of violence). The Court ultimately found by clear and convincing evidence that no combination of release conditions would reasonably assure the safety or any one person or the community, holding that the Defendant had not presented sufficient evidence to rebut the presumption of dangerousness. Therefore, the Defendant has been detained pending trial.

The Defendant's second Motion to Review Pretrial Detention Order, filed on November 5, 2021, largely regurgitates many of the arguments previously addressed by the Court at the hearing on April 13, 2021. *See* Defendant's Motion, ECF No. 32. For example, the Defendant relies on his college education, prior employment, and family support in an effort to rebut the presumption of dangerousness. Id. He further expresses the same request noted in his first review motion to "utilize the pretrial period proactively." Id. at 2. These arguments do not contain any new information that was not known to the movant at the time the original Motion to Review was filed, and are not sufficient to justify a review of the Detention Order at this time. However, the

2

Defendant also now relies on an evaluation, purportedly conducted by Dr. Fred Berlin, in which the Defendant asserts that the psychologist concluded that he is "not a pedophile, or other type of child predator, and is not a danger to the community." Id. at 1. The Motion to Review also focuses on the recently identified conditions of detention found during an inspection at the Central Detention Facility (CDF). As detailed below, neither the unsupported conclusions of Dr. Berlin, nor the conditions at CDF provide sufficient evidence to rebut the presumption of dangerousness that is applicable in the present case. Furthermore, a review § 3142(g) factors make clear that there are no conditions of release that will reasonably assure the safety of any other person and the community. As such, the Defendant must be detained pending trial.

## ARGUMENT

A defendant must be detained pending trial if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A defendant ordered detained by a magistrate judge may seek review of the detention order by the court having original jurisdiction over the offense. 18 U.S.C. § 3145(b). Any such motion shall be determined promptly. *Id.*

### I. The Presumptions that Apply in this Case, and the Section 3142(g) Factors, Weigh Heavily in Favor of Detention

The Sexual Exploitation of Children is a felony under chapter 110 and is, therefore, a crime of violence. Furthermore, it is also an offense involving a minor victim under section 2251(a) and thus, under 18 U.S.C. § 3142(e)(3)(E), creates a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. This presumption "operate[s] at a minimum to impose a burden of

3

production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"); *see also United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant does not pose a flight risk, danger to the community by itself is sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010)

("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

### A.     Nature and Circumstances of the Charged Offense

The Defendant is currently charged with an offense which carries a mandatory minimum sentence of fifteen years incarceration. *See* 18 U.S.C. 2251(a).  In this case, the Defendant abused and exploited a little girl who was approximately seven years old.  He abused this little girl not only for his own sexual gratification, but also at the direction of and for the sexual gratification of DEFENDANT #1, with whom he was in a subordinate sexual relationship. He did so knowing that the assault perpetrated on the child was being video-recorded, forever memorializing the abuse that this little girl endured.  This factor clearly favors detention, since the Defendant's criminal conduct is egregious and his offenses were perpetrated against one of the most vulnerable members of the community:  a child.

As previously addressed, *see* Gov't Opp. ECF No. 15, children who are sexually abused, like the seven-year-old victim in this case, often suffer serious physical and mental health issues.  Studies suggest that early trauma, including sexual abuse, may interfere with brain development, and can produce various neuropsychiatric symptoms commonly associated with drug use. *See* Anderson, C. M., Teicher, M. H., Polcari, A., & Renshaw, P. F. (2002):  Abnormal T2 relaxation time in the cerebellar vermis of adults sexually abused in childhood: Potential role of the vermis in stress-enhanced risk for drug abuse. *Psychoneuroendocrinology, 27*, 231-244; Baynard, V. L., Williams, L. M., & Siegel, J. A. (2001): The long-term mental health consequences of child sexual abuse: An exploratory study of the impact of multiple traumas in a sample of women. *Journal of Traumatic Stress, 14*(4), 697-715

(noting that child sexual abuse victims reported a lifetime history of more exposure to various traumas and higher levels of mental health symptoms). Other studies have found that individuals who suffer sexual abuse in their childhood years have a higher rate of anxiety, disruptive behaviors, substance abuse, and personality disorders compared to others who may have experienced other forms of abuse or neglect. *See* Cohen, P., Brown, J., & Smailes, E. (2001): Child abuse and neglect and the development of mental disorders in the general population. *Development and Psychopathology, 13*, 981-999; Dube, S. R., Anda, R. F., Felitti, V. J., Chapman, D. P., Williamson, D. F., & Giles, W.H.(2001): Childhood abuse, household dysfunction, and the risk of attempted suicide throughout the life span: Findings from the adverse childhood experiences study. *JAMA, 286*(24), 3089-3096 (noting that a powerful relationship exists between adverse childhood experiences and risk of attempted suicide through the life span); Merrill, L. L., Thomsen, C. J., Sinclair, B. B., Gold, S. R., & Milner, J. S. (2001): Predicting the impact of child sexual abuse on women: The role of abuse severity, parental support, and coping strategies. *Journal of Consulting and Clinical Psychology, 69*(6), 992-1006 (child sexual abuse is a significant predictor of long-term psychological difficulties ranging from depression and anxiety to sexual problems and dissociative symptomatology). Research also indicates that sexually abused adolescents are at an increased arrest rate for sex crimes and prostitution, and are at an increased risk for earlier pregnancy. *See* Putnam, F. W. (2003): Ten-year research update review: Child sexual abuse. *Journal of the American Academy of Child and Adolescent Psychiatry, 42*(3).

The consequences that children suffer as a result of being sexually abused and exploited by adults are often devastating and lifelong. In the present case, the victim in this case will come to learn that her abuse was forever captured on film. She will learn that her mother and the

Defendant reviewed this video tape for their own sexual gratification, and she will always wonder and worry about who else has seen the most horrifying and degrading moments of her life. There can be no doubt of the severity of the Defendant's crimes, a factor which weighs heavily in favor of detention.

### B. The Weight of the Evidence Against the Defendant

As proffered by the Government during the initial Detention Hearing on March 5, 2021, and the subsequent hearing on April 13, 2021, the evidence of the Defendant's guilt is extremely strong. The Government is in possession of recorded communications between the Defendant and another individual, who is referenced in the Complaint as DEFENDANT #1. These communications, which occurred over different dates, corroborate the nature of the sexual relationship this Defendant engaged in with DEFENDANT #1. Furthermore, the Government is in possession of three videos, each which graphically depict the Defendant's sexual abuse of a defenseless child. Not only has DEFENDANT #1 confirmed that this Defendant is the adult man who can be seen in these videos, but law enforcement has confirmed that this Defendant has a distinctive, heart-shape birthmark on his back – which is visible in the videos recovered in DEFENDANT #1's Dropbox account.

Following the Defendant's arrest, he was read his *Miranda* warnings, and interviewed by law enforcement. The Defendant admitted that he knew DEFENDANT #1; that he engaged in a sexual relationship with her; and that he had been to her home on more than one occasion. Furthermore, the Defendant admitted to using KIK to communicate with DEFENDANT #1. Furthermore, and most importantly, this Defendant admitted that while he was inside DEFENDANT #1's home, he sexually abused a little girl, knowing that the assault was being recorded. The Defendant

7

claimed he did so at DEFENDANT #1's direction and that he had seen some of the videos that were created, depicting this abuse.

Additionally, a review of DEFENDANT #1's email accounts has revealed other images depicting the Defendant posed with the minor victim. While these images may not qualify under the federal definition of child pornography, they do show the child partially clothed. There is no metadata associated with these images, but the existence of these pictures, when placed together with the other evidence in the case, seem to support the Defendant's statements that he was present inside DEFENDANT #1's home, and had access to this child, on more than one occasion. Thus, the weight of the evidence also weighs heavily in favor of detention.

### B. History and Characteristics of the Defendant

The Defendant once again contends that his personal characteristics, including his college education, his prior record of employment, his lack of a criminal history, and his continued family support, when combined with the conditions of release that he proposes, provide sufficient evidence to rebut the presumption of dangerousness applicable in this case. They do not. As discussed in the Government's prior opposition, ECF No. 15, as well as at the hearings on March 5, 2021, and April 13, 2021, education, employment, and a lack of a criminal record, are simply not determinative of whether a defendant is dangerous in the context of child sexual abuse and exploitation.

This Court, as well as Judge Faruqui, previously considered the Defendant's lack of a criminal record and his familial support when affirming the Detention Order issued in this case. The Government acknowledges that the Defendant lacks a criminal record, but it is worth noting that the Defendant has been arrested for Soliciting a Prostitute in 2014. However, the fact that the Defendant has no criminal history does not mean that he has not engaged in prior criminal

conduct, particularly in offenses involving the online exploitation of children and the hands-on sexual abuse of children.

The sexual exploitation of children is a crime that is committed in secret. This secrecy, combined with the overwhelming presence of digital devices and the near universal access to the internet, makes detection of these criminal offenses difficult. As this case demonstrates, the defendant was utilizing the Internet to meet individuals who had a wide variety of sexual fetishes. He communicated with some of these individuals online, and he met some of them in person. The sexual assault this Defendant committed against a child, which was captured on videotape, occurred approximately three years prior to his arrest. The facts of this case show why it is so dangerous to overstate the importance of an arrest regcord or criminal history of these particular offenses when making decisions regarding the danger these offenders pose to the most vulnerable members of our society. Here, the Defendant's sexual assault of a young child would have remained undetected, had law enforcement not successfully investigated and arrested the individual referred to in the Criminal Complaint as DEFENDANT #1.

As the Government has addressed in prior pleadings, see ECF Nos. 3 and 15, the lack of an arrest record's significance makes sense when considering that it is well-known that children often do not disclose sexual abuse, and that these types of crimes are wildly underreported. *See United States v. Gregory Todd Numan*, 3:160cr000065(TMB)(DAK)(February 26, 2018: Expert Testimony of Clinical Psychologist Darrell Turner). In *Numan*, Dr. Turner provided expert testimony to the Court to explain why a reliance on the lack of prior criminal history of an offender charged with sexual offenses committed against children does not serve as a reliable indicator of

9

their future risk for reoffending.  As explained by Dr. Turner:

> "One of the main problems is the fact that these offenses are among the most undetected offenses that there are. This is not like bank robbery or murder, where it's generally assumed and expected that it's going to be detected and reported. We know from research that about only about five percent of sexual offenses against children are ever reported.
>
> Of those, of that five percent, about another five percent result in a conviction. So we're talking about an exponentially small number of offenses that are reported and accounted for. So it's sort of akin to saying there were only four drunk people in New Orleans in Mardi Gras this year because there were only four arrests for public intoxication, and it's not a good representation of what's actually going on out there. So to say it without the qualifier that, hey, this is a gross underestimate, but you know, so far, this is what we've been able to find, I think, is misleading and very, very dangerous."

at pages 22-23.  *See also* K. London, M. Bruck, S. J. Ceci & D. W. Shuman, *Disclosure of Child Sexual Abuse: What Does the Research Tell Us About the Ways Children Tell?*, 11 PSYCHOLOGY, PUB. POL'Y & L. 1, 194-226 (American Psychological Association, 2005)(finding in a study of adult retrospective victim studies about child sex abuse, approximately 60 – 70% of adults sexually abused as children did not recall disclosing the abuse during childhood);  *See also* D. W. Smith, E. J. Letourneau, B. E. Saunders, D. G. Kilkpatrick, H. S. Resnick & C. L. Best, *Delay in Disclosure of Childhood Rape: Results from a National Survey*, 24 CHILD ABUSE & NEGLECT 2, 273-87 (2000)(the results of the study found that only 12% of child rape victims' assaults were reported to law enforcement authorities.).  As such, the fact that the Defendant lacks a criminal record does not correlate to the danger that he poses to members of our community.  Neither do his level of education, prior employment (the Defendant was terminated as a result of the instant case), or family and community support.  The Defendant enjoyed all of these benefits during the

10

time that he perpetrated the heinous crimes that bring him before the Court today. These factors were not sufficient to stop the Defendant from committing these offenses and/or accessing the Internet to help facilitate his criminal conduct then, and there is no reason to believe that will stop him from doing so now.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

The Defendant presents a real danger to the community should he be released and his proposal of home incarceration with GPS, along with therapy and treatment, is simply not sufficient to reasonably assure the safety of the community.

As the Eastern District of New York has held:

> ...the issue is not only defendant's potential
> abuse of children and his interaction with children
> if on bail, but also his ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006). The *Reiner* court further found that there were no conditions in that case that could reasonably assure the safety of the community "[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..." Id. at 399; *see also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008) (unpublished)(noting the ease of accessing the internet by means of various devices and stating "[t]he Court finds that the evidence clearly and convincingly establishes that, confined to his home and electronically monitored, defendant would not be prevented from obtaining the means to access the internet and attempting again to obtain child pornography and in this poses a danger to children and the community"); *United States v. Doyle,*

11

2007 WL 1097844, *1 (W.D.Va. 2007)(finding danger of future offenses "especially considering that pornographic images of children are widely available on the internet and can be easily accessed by a personal computer"), conviction rev'd on other grounds, 650 F.3d 460 (2011).

As the Government argued at both prior hearings, home confinement, even in the presence of a third-party custodian, is not sufficient to alleviate the danger this offender poses to the community when the Court considers how this Defendant committed the offenses he is charged with. Here, this offender was using digital devices and the Internet to meet other individuals with various sexual fetishes, some of whom he met in person. He used these devices to communicate with DEFENDANT #1, and to record and view the sexual abuse of a little girl. He did so using internet capable devices that are mobile, widely available, and difficult to detect. Furthermore, the Defendant committed his crime all while he was presumably close with, and having daily contact with, his parents – the proposed third-party custodians.

When considering the issue of detention, Courts should also consider that sex offenders have a high rate of recidivism. *See Lombard v. United States*, 44 F. Supp. 3d 14, 26 (D.D.C. 2014) (noting that the lower court's concerns about recidivism was supported by substantial authority (citing *Smith v. Doe,* 538 U.S. 84, 103, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) ("The risk of recidivism posed by sex offenders is frightening and high.") (citations omitted); *McKune v. Lile,* 536 U.S. 24, 33, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (noting that "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault"); *United States v. Irey,* 612 F.3d 1160, 1214 (11th Cir.2010) ("[T]he threat of recidivism by a pedophile who has sexually abused a child is appalling.") (citation and quotation marks omitted); *United States v. Allison,* 447 F.3d 402, 405–

06 (5th Cir.2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.")); *see also United States v. Allison*, 447 F.3d 402, 405-406 (5th Cir. 2006) (Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders). Indeed, As Judge Posner recently wrote:

> We need evidence-driven law just as we need evidence-driven medicine. Statistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children. R. Karl Hanson, Kelley E. Morton & Andrew J.R. Harris, A Sexual Offender Recidivism Risk: What We Know and What We Need to Know,@ 989 Annals of the N.Y. Academy of Sciences 154, 157 (2003) (tab.1). Some studies show a high rate of recidivism among pedophilic sex offenders generally, ranging from 10 percent to 50 percent. Ryan C.W. Hall & Richard C.W. Hall, AA Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues @ 82 Mayo Clinic Proceedings 457, 467 (2007). Another study found that only 6.8 percent of consumers of child pornography had been charged with a new child-pornography offense within 4 years but that the percentage rose to 9.5 percent within 6 years. Angela W. Eke, Michael C. Seto & Jennette Williams, Examining the Criminal History and Future Offending of Child Pornography Offenders: An Extended Prospective Follow-up Study,@ Law & Human Behavior, Nov. 19, 2010 (tab.1), www.springerlink.com/content/h4616862621x8616/ (visited June 23, 2011).

*United States v. Garthus*, 552 F.3d 715, 720 (7th Cir. 2011).

For these reasons, it is clear that that the Defendant poses a significant danger to the community and that, given this risk, there is no condition or combination of conditions that will reasonably assure the safety of the community should he be released. Therefore, the Defendant should remain detained pending trial.

## II.     Arguments About the Conditions at CDF are now Moot

The Defendant relies on the recently publicized findings from the inspection conducted by the United States Marshal's Service (USMS) regarding conditions at the Central Detention Facility to support his argument for release on various conditions. The Government fully appreciates the seriousness of the findings in the November 1, 2021 USMS memorandum regarding CDF and is

13

in close contact with the District and other law enforcement partners regarding the issues identified by USMS. For example, D.C. Deputy Mayor for Public Safety Chris Geldart reports in correspondence dated November 3, 2021, that an Oversight and Monitoring Team, including Rev. Isaac of the District of Columbia Corrections Information Council ("CIC"), "completed a thorough tour" of CDF and has started the following work: (1) determine if there is a need to move certain inmates from CDF to CTF;[1] (2) compile all current and recent inspection reports/documents related to conditions, staffing, and operations at CDF in the context of the observations reported in the USMS letter; and (3) create a prioritized, remedial action report. Furthermore, the USMS has begun the process of moving federal defendants currently housed at CDF to other Bureau of Prisons (BOP) facilities, namely Lewisburg United States Penitentiary, where detention conditions meet federal standards. In fact, the Government informed defense counsel that the Defendant was going to be transferred to another facility on November 4, 2021. According to BOP, the Defendant has already been transferred to Lewisburg. As such, any arguments made by the Defendant regarding the conditions at CDF, while concerning, are now moot. The Defendant is no longer at CDF, and the conditions there at the present time should in no way alter this Court's analysis under the 3142(g) factors.

### III. The Court Should Exclude Dr. Berlin's Alleged Report from Consideration

In the Motion for Review of the Detention Order, the defense seems to place great weight on a report authored by Dr. Fred Berlin. Curiously, defense counsel has not provided that report to either the Government or the Court. As such, the Government is in no position to assess the

---

[1] According to the November 1, 2021 USMS memorandum, "Conditions at the Central Treatment Facility (CTF) were observed to be largely appropriate and consistent with federal prisoner detention standards."

14

validity or quality of the report. Furthermore, the Government has no ability to ascertain how Dr. Berlin arrived at his supposed conclusions that the Defendant "is not a pedophile or child predator and poses no danger to the community." *See* Defendant's Motion, ECF No. 32.

The District of Columbia Circuit's ruling in *United States v. Day* is instructive on this issue. 524 F.3d 1361 (D.C. Cir. 2008). In *Day*, the court affirmed the District Court's decision to exclude expert testimony, due to the expert's failure to articulate what he "concluded from any individual test result, interview, or expert report," making it "virtually impossible for the Government to engage" with the evidence. *Id.* at 1371–72. In the present case, neither the Court nor the Government is in possession of enough information to determine if Dr. Berlin's report included accurate facts to support his conclusions, or whether or not the report accurately describes the results of the Defendant's testing. Without more information, the Government is being precluded from being able "to engage [] meaningful[ly]" with the test results and the overarching conclusions contained in the report that defense counsel is asking this Court to accept and take into consideration when making a ruling on the Defendant's detention status. *See id.* at 1372. As a result, the Court and the Government are left without corroborative evidence necessary to allow the parties to sufficiently rely on the conclusions that are purportedly included in the report. For all of these reasons, the Government asks that this Court exclude Dr. Berlin's report from consideration when ruling on the Motion to Review the Detention Order.

Even if the Court chooses to rely on the purported conclusions contained in the report by Dr. Berlin, his opinions are not sufficient to overcome the presumptions that apply to the present case, nor do they alter the necessity of reviewing the factors laid out in Section 3142(g). A clinical

determination that a person is "not a pedophile" does not negate either a sexual interest in children or a willingness to engage in sexual acts with children. And, it certainly doesn't change the facts of what this offender did: he sexually assaulted a little girl, knowing that he was being videotaped. Furthermore, the Court should reject the purported conclusions attributed to Dr. Berlin that the defendant is "not a child predator and poses no danger to the community." Id. at 7. These do not appear to be clinical determinations and would therefore be outside of this potential expert's area of expertise.

**WHEREFORE**, for the foregoing reasons and for any other such reasons as may appear to the Court, the government respectfully requests that the Court deny the defense motion for review of the Detention Order.

                                    Respectfully submitted,
                                    MATTHEW M. GRAVES
                                  United States Attorney
                                  D.C. Bar No. 481052

                                  By:  \_\_\_/s/_____
                                  AMY E. LARSON
                                  Assistant United States Attorney
                                  N.Y. Bar No. 4108221
                                  555 4th Street, N.W.,
                                  Washington, D.C. 20530
                                  202-252-7863
                                  Amy.larson2@usdoj.gov

Dated: November 10, 2021